NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re | : | |
| NILDA ECKERT, | : | Civ. No. 07-01880 (GEB) |
| Debtor. | : | **MEMORANDUM OPINION** |
| CHINATRUST BANK (U.S.A.) Inc. | : | |
| Appellant, | : | |
| vs. | : | |
| NILDA ECKERT, | : | |
| Appellee. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the appeal of Chinatrust Bank ("Appellant" or "Chinatrust"), from the March 2, 2007 Order of the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court") Expunging Claim and Avoiding Lien. ("March 2 Order"). Appellant also appeals the Bankruptcy Court's order of April 11, 2007 denying Appellant's Motion

for Reconsideration. ("April 11 Order"). The Court, exercising jurisdiction pursuant to 28 U.S.C. § 158(a)(1), has fully considered the parties' submissions and has decided the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Appellant's appeal is denied and the Bankruptcy Court's March 2 Order and April 11 Order are affirmed.

**I. BACKGROUND**

On March 12, 2002, Chinatrust entered into a credit line revolving loan agreement with Eckert Enterprises, a New Jersey Corporation, in the amount of $360,000. (Revised Appendix "RA" 202; RA 204;). Chinatrust's line of credit was secured by a security interest on all of Eckert Enterprises' inventory and receivables as well as Elva and Nilda Eckert's residence. (RA 202-203).

In April 2004, Eckert Enterprises filed for bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code under the docket number 04-22371. (Appellee's Brief p. 3; RA 237). On June 3, 2005, the Chapter 11 case was converted to a Chapter 7 proceeding and Donald Biase, Esq. was appointed as the Trustee. (Id.; RA 237).

On July 12, 2005, counsel for the Trustee wrote to Chinatrust, proposing that the Trustee auction the inventory and that Chinatrust and the Trustee "share 50/50 in the net liquidating costs." (RA 28 ExA(3)). However, on August 19, 2005, the Trustee filed a "notice of proposed abandonment" of the inventory, equipment, and supplies of Eckert Enterprises. (RA 145). The Trustee assigned a petition value to the inventory, equipment, and supplies of $400,000. (Id.). On August 29, 2005, counsel to Chinatrust, Anne Seelig, Esq. wrote to the Trustee, requesting that the Trustee withdraw the Abandonment and proceed with the auction. Ms. Seelig informed the Trustee that based upon the informal liquidation estimate of $75,000, Chinatrust agreed to split the net

proceeds of the auction 50/50 with the Trustee. (RA 28 Ex.A(1)). Notwithstanding this request, the inventory, equipment and receivables were abandoned and the Chapter 7 case was closed in January, 2006. (Appellee's Brief, p. 4). The Trustee stated in the "Chapter 7 Information For Notice of Abandonment" that it sought to abandon the property because it was of "inconsequential value to the estate." According to Appellee, when Chinatrust asserted that it was a secured creditor with a valid lien against Eckert's equipment, inventory, and receivables in the Chapter 7 Bankruptcy Case, the Trustee relied upon this assertion and elected to abandon the property. Appellee maintains that because the Trustee realized that Appellant's lien was greater than the estimated value of the secured property, the Trustee chose to abandon the property because auctioning off the property would not have resulted in any funds going to the estate. (Appellee's Brief, p. 6).

Chinatrust never received any of the inventory or equipment and did not collect any receivables. (RA196). Chinatrust believed that once the inventory was abandoned, it lost its right to it. (RA 132, 141). Further, Chinatrust believed that had it sought possession of the inventory, it would have had to pay rent due for the housing of the inventory that might be in excess of the inventory itself. Chinatrust claims that it had no obligation to incur this cost. (Revised Appendix, p. 133).

On March 5, 2006, Nilda Eckert voluntarily filed for bankruptcy pursuant to Chapter 13 of the United States Bankruptcy Code. (Appellee's Brief, p. 2). On April 28, 2006, Chinatrust filed a secured proof of claim against Nilda Eckert in the amount of $198,224.61. (RA, p. 150). On August 22, 2006, Appellee filed a motion to expunge Chinatrust's secured proof of claim and to void Chinatrust's lien. (Appellee's Brief, p. 2). After several adjournments, oral argument took place on January 24, 2007. On February 28, 2007, the Bankruptcy Court rendered an oral opinion granting

the Debtor's motion. An order followed on March 2, 2007. (Id.).

The Bankruptcy Court found that the Trustee abandoned the property after determining that the estimated profits from the sale were less than the amount of Chinatrust's lien. (Bankruptcy Court's Oral Opinion, p. 3). After the abandonment, the Bankruptcy Court held that "the parties were returned to their pre-bankruptcy state with all of their rights [intact and] Chinatrust's UCC lien was not affected." (Id.). The Bankruptcy Court further found that Chinatrust, as a secured creditor was entitled to dispose of the collateral as it saw fit, as long as the disposition was commercially reasonable pursuant to N.J.S.A. 12A:9-610. Because Chinatrust made no efforts to determine whether the value of the abandoned property was greater than the rent due to the warehouses where the goods were housed, and made no effort to collect any funds with regard to its lien on Eckerd's Accounts Receivable, the Bankruptcy Court found that Chinatrust did not satisfy its burden to demonstrate that it acted in a commercially reasonable manner with regard to the abandoned collateral. (Id. at 3-4.). Pursuant to N.J.S.A. 12A:9-626(a)(4), the Bankruptcy Court "zeroed out" the remainder of Chinatrust's claim, because Chinatrust failed to demonstrate the value of the unrealized collateral. (Id. at 4.).

On March 8, 2007, Chinatrust filed a notice of appeal and a motion for a stay pending appeal. Thereafter, on March 12, 2007, Chinatrust filed a motion for reconsideration of the March 2, 2007 order. (Appellee's Brief, p. 2). On March 28, 2007, the Bankruptcy Court denied Chinatrust's motion for a stay. On April 5, 2007, this Court denied Chinatrust's application for a stay pending appeal following a telephone conference. (Id. at 3). On April 11, 2007, the Bankruptcy Court denied appellant's motion for reconsideration. (Id.). That same day, this Court denied another application for a stay pending appeal made by Chinatrust. (Id.). Appellant filed an amended notice of appeal

on April 23, 2007.  (Id.).

## II. DISCUSSION

### A. Standard of Review

Bankruptcy Rule 8013 provides that the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ."  Fed. R. Bankr. P. 8013.  A factual finding is clearly erroneous only where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  In re Cellnet Data Sys., Inc., 327 F.3d 242, 244 (3d Cir. 2003) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).  A bankruptcy court's conclusions of law, on the other hand, are reviewed *de novo*.  Id.  Where mixed questions of law and fact are presented, the appropriate standard must be applied to each component of the appeal.  Id.

### B. The Bankruptcy Court did not Err in Finding that Chinatrust Failed to Act in a Commercially Reasonable Manner

Appellant argues that its decision not to pursue the abandoned goods was commercially reasonable given the Trustee's conclusion that the goods were of minimal value to the estate and because paragraph 37 of the Mortgage Agreement stated that all loans were cross-collateralized (Appellant's Brief, pp. 11-12).[1]  Appellant also argues that New Jersey's version of the UCC does

---

[1] Chapter 37 of the Mortgage Agreement provides that "[e]ither Eckert or Mortgagor may from time to time have other loan obligations to Mortgagee.  All loans and/or credit facilities between Mortgagor, or Eckert, and Mortgagee shall be cross-defaulted and all collateral under the respective loans and credit facilities shall be cross-collateralized, so that a default in any loan obligation to Mortgagee shall be a default in all loan obligations to Mortgagee.  In connection therewith, Mortgagee shall have the right, at its sole and absolute discretion, to collect against, hold or withhold this Mortgage or the security interest created thereunder until full payment and satisfaction of all loans and/or credit facilities between Eckert, or Mortgagor, and Mortgagee."

not "require a secured creditor to reclaim or repossess its collateral if it does not wish to and does not deem a business decision not to do so as 'commercially unreasonable.'" (Id. at 13). Rather, Appellant urges that pursuant to Glenfed Financial Corp., Commercial Finance Div. v. Penick Corp., 276 N.J. Super. 163 (App. Div. 1994), a secured creditor's conduct in situations where the collateral is not disposed of is governed by a standard of "good faith." (Id. at 13-15). Appellant argues further that because it never received any of the collateral, Appellee did not abandon the collateral to it. (Id. at 15-16). Appellant also argues that the Bankruptcy Court's March 2 holding effectively served as a "'constructive foreclosure,'" which is forbidden under applicable law. (Id. at 16). In addition, Appellant argues that because the debtor's Chapter 13 Confirmed Plan did not provide for voiding Chinatrust's mortgage lien, "the [B]ankruptcy [C]ourt erred as a matter of law when it voided Chinatrust's mortgage lien and expunged its Proof of Claim." (Id. at 18).

A secured party is entitled to take possession of collateral after default. N.J.S.A. 12A:9-609. The secured party may dispose of such collateral in any manner, so long as the disposition is commercially reasonable. N.J.S.A. 12A:9-610(a), (b). The Uniform Commercial Code does not provide an express definition for commercial reasonableness. Smith v. Lopez, 304 N.J. Super. 26, 31 (Ch. Div. 1996). However N.J.S.A. 12A:9-627(b) gives several examples of commercially reasonable dispositions. The statute provides that "[a] disposition of collateral is made in a commercially reasonable manner if the disposition is made: (1) in the usual manner on any recognized market; (2) at the price current in any recognized market at the time of the disposition; or (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." Comment 3 to the statute notes that these manners of disposition are examples and are neither "required [n]or exclusive."

This Court is not persuaded that the Bankruptcy Court erred in finding that Appellant failed acted in a commercially reasonable manner pursuant to N.J.S.A. 12A:9-610.  Appellant does not challenge the Bankruptcy Court's finding that the Trustee only abandoned the collateral after it determined that the estate would receive no funds from auctioning it off.  The estate had significant liens against it, so it was logical for the Trustee to conclude that the potential proceeds from an auction would not be great enough to result in any funds going back to the estate.  However, it does not follow that the abandoned property was worthless to Appellant.  And as such, this Court agrees with the Bankruptcy Court that Appellant was at a minimum, required to make an inquiry into the value of the abandoned collateral to make an informed decision of whether acquiring the collateral was financially worthwhile for Appellant.  (See Bankruptcy Court Oral Opinion, p. 4).  Concluding that the abandoned collateral was worthless because the Trustee chose to abandonment it was not commercially reasonable.

We are also unpersuaded by Appellant's argument that because it never received any of the collateral, Appellee did not abandon the collateral to it.  The fact that Appellant was never in possession of the collateral did not relieve it of its duty to act in a commercially reasonable manner.

Appellant's argument that paragraph 37 of the Mortgage Agreement allowed it to "'cherry-pick' among its collateral" (Appellant's Brief, p. 13) was not considered by the Bankruptcy Court on Appellant's Motion for Reconsideration because Appellant had not previously raised this legal theory.  (Bankruptcy Court's Oral Opinion on Motion for Reconsideration,  p. 18.).  Because this issue was not raised before the Bankruptcy Court, this claim is also not properly before this Court on appeal. See State of New Jersey Dept. of Environmental Protection v. North American Products Acquisition Corp., 137 Bankr. 8, 13 (D.N.J. 1992).

7

Appellants' reliance on Glenfed Financial Corp., Commercial Finance Div. v. Penick Corp, 276 N.J. Super. 163, 177-79 for the proposition that the UCC does not apply where the creditor has not possessed the abandoned property is misplaced. The New Jersey Appellate Division in Gledfed made no such holding. Further, the court specifically cited N.J.S.A. 12A:9-502(2), which was replaced by and is virtually identical to N.J.S.A. 12A:9-607(c). N.J.S.A. 12A:9-607(c) requires that a secured party "proceed in a commercially reasonable manner if the secured party: (1) undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral; and (2) is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor or a secondary obligor." Thus neither Glenfed nor the UCC limit the commercial reasonableness requirement to situations where the collateral has not been disposed of.

Appellant's argument that the Bankruptcy Court's March 2 holding effectively served as a constructive foreclosure is also unpersuasive. It is true that "a debtor cannot unilaterally cause an acceptance of collateral." See N.J.S.A. 12A:9-620, comment 5. However, the Bankruptcy Court never held that there was such a foreclosure. Rather the Bankruptcy Court held that Appellant's failure to inquire into the location and value of the collateral was commercially unreasonable. Had the Appellant done so and concluded that the costs of acquiring and selling the collateral were greater than the potential profits, Appellant would have fulfilled its duty to act commercially reasonably and would not have been required to acquire the collateral.

Appellant argues as it did on its Motion for Reconsideration that the Bankruptcy Court's March 2 decision failed to take into consideration that a creditor's lien survives a Chapter 13 Bankruptcy proceeding unaffected. As was pointed out by the Bankruptcy Court in its oral opinion rejecting Appellant's Motion for Reconsideration, the Bankruptcy Court specifically held that

8

Appellant's lien did survive the mortgage. (See Bankruptcy Court Oral Opinion on Motion for Reconsideration, p. 17; Bankruptcy Court Oral Opinion, p. 3). As such Appellant's argument is misplaced.

Appellant's assertion that a debtor may only invalidate a lien through a Chapter 13 Plan is also not persuasive. Appellant argues that appellee was required to initiate an adversary proceeding to challenge the "'validity and extent'" of Appellant's lien. (Appellant's Reply Brief, p. 18). However, "[a]n adversary proceeding is not required to modify a secured creditor's rights in chapter 13." Lee Servicing Co. v. Wolf (In re Wolf), 162 B.R. 98, 106 (Bankr. D.N.J. 1993). Pursuant to Section 502 of the Bankruptcy Code, claims are allowed unless objected to by a "party in interest." 11 U.S.C.S. § 502(a). If there is an objection, a hearing is held, after which the Bankruptcy Court determines the amount of the claim and allows the claim subject to whether the claim is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C.S. § 502(b)(1). In addition, Bankruptcy Rule 3012 states that "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct." The advisory notes for Rule 3012 explain that an adversary proceeding is required when the basis of the lien is being challenged, but the valuation of a lien is appropriately determined pursuant to Bankruptcy Rule 3012. As such, the Bankruptcy Court properly heard Appellee's motion.

**C**. **The Bankruptcy Court did not Err in Awarding Attorney's Fees**

Appellants' arguments regarding the award of Attorneys' Fees, both the denial of Attorneys' Fees to Appellant and the award of Attorneys' fees to Appellee are also unpersuasive. As Appellant

9

was unable to demonstrate the value of the abandoned property, its claim for attorneys' fees was properly nullified when the Bankruptcy Court zeroed out the claim pursuant to N.J.S.A. 12A:9-626. Appellee initially moved for Attorneys' fees in its original Motion to Expunge Claim and Avoid Lien, filed on August 22, 2006. Appellant neither objected to this request in its opposition papers or at the oral argument on the motion on February 28, 2007. Appellant also failed to address the award of Attorneys' Fees that was granted in the March 2 Order, in its Motion for Reconsideration. As Appellant failed to object to the award of Attorneys' Fees at either Motion before the Bankruptcy Court, review of this award is not properly before this Court. Halvajian v. Bank of New York (In re Halvajian), 216 B.R. 502, 509 (D.N.J. 1998).

**III. CONCLUSION**

For the foregoing reasons, Appellant's appeal is denied and the Bankruptcy Court's Order of March 2, 2007 granting Appellee's Motion Expunging Claim And Avoiding Lien as well as the Bankruptcy Court's Order of April 11, 2007 denying Appellant's Motion for Reconsideration are affirmed. An appropriate form of order accompanies this Memorandum Opinion.


Dated: November 1, 2007

                                        s/ Garrett E. Brown, Jr.
                                    GARRETT E. BROWN, JR., U.S.D.J.